Filed 8/11/26  P. v. King CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AUNDRA LIONELL KING,<br><br>    Defendant and Appellant. | B339341<br><br>(Los Angeles County<br>Super. Ct. No. 23CMCF00116) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sean Coen, Judge.  Affirmed with directions.

Michael Reed for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Deepti Vaadyala, Deputy Attorneys General for Plaintiff and Respondent.

Appellant Aundra Lionell King appeals his conviction for grand theft. King challenges the sufficiency of evidence to support the grand theft conviction, the admissibility of witness testimony regarding the value of the stolen items, and the failure to instruct on the value of the stolen items. He also claims cumulative error. We reject King's claims and affirm the judgment but order the clerk of the superior court to correct the abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *September 24, 2023 incident*

On September 24, 2023, King jumped the backyard fence of the home of Phyllis and Mallory Funches in Gardena, California, and broke into their backyard storage shed. King broke the lock, pried open the door, and removed several items including a toolbox containing various tools and a power weedwhacker. The incident was caught on a surveillance video taken by a neighboring electrical company. Mallory Funches was given a still shot from the surveillance video, and recognized King from having seen him around the neighborhood. Mallory Funches approached King with the photo. King admitted he was the person in the photo and told Mallory Funches that he no longer had possession of the stolen items but would attempt to "make things right." King did not return the items.

#### B. *December 25, 2023 incident*

On the evening of December 25, 2023, King broke into the warehouse of Pro Design Group, a plastic manufacturing facility in Gardena, California. Over a period of eight hours, King stole

2

approximately 12 to 16 wheels[1] from the warehouse. King also damaged the business' front gate, which cost a "couple hundred dollars" to repair. The incident was captured by Pro Design Group's motion activated cameras.

Margarita Garcia Orozco, an office manager at Pro Design Group, testified about the stolen wheels. Orozco testified that approximately 12 wheels were stolen from the warehouse. From the surveillance footage, Orozco identified King as the individual who took the wheels.

Orozco testified that she had worked at Pro Design Group for four years, and her job responsibilities included accounting, accounts payable, accounts receivable, and payroll. She stated that related to her job duties she was familiar with the warehouse inventory and with the production of plastic products for wheels.

According to Orozco, each wheel was worth "around $200." Pro Design Group used the wheels for testing purposes but did not manufacture or sell wheels. On cross-examination, Orozco explained that the wheels were factory seconds provided by a customer. The wheels were used to determine the correct dimensions of the plastic products that Pro Design Group produced. She confirmed that factory seconds usually had some sort of manufacturing defect, which would typically affect the value of the wheel. However, she did not change her estimation of the value of the wheels.

---

[1] The witnesses and attorneys referred to the items as wheels, wheel rims, and tire wheels. Based on the description provided by the witnesses, each stolen item consisted of the entire wheel. We refer to the items as wheels.

Darrin Olsen, the Chief Operating Officer and a partial owner of Pro Design Group, also testified regarding the value of the stolen wheels. Olsen testified that he was familiar with the warehouse inventory and approximately 16 wheels were stolen from the warehouse. He explained that the wheels were used for quality checking the wheel dunnage the company manufactured for a wheel company. When asked the value of each wheel he replied, "estimated $200, $400 each. Maybe I – honestly I couldn't tell you exactly."

## II.     Procedure

On April 17, 2024, a jury convicted King of one count of second degree burglary (Pen. Code, § 459; count 2),[2] one count of grand theft (§ 487, subd. (a); count 3), and one count of vandalism under $400 (§ 594, subd. (a); count 4). The court declared a mistrial as to the additional count of second degree burglary (§ 459; count 1) related to the September 24, 2023 incident. King pleaded no contest to this charge.[3]

On May 15, 2024, the trial court imposed three years on count 2 and a consecutive one year on count 4. The court

---

[2]     All further undesignated statutory references are to the Penal Code.

[3]     King also admitted that he sustained eight prior convictions, which rendered him ineligible for probation under section 1203, subdivision (e)(4). Additionally, he admitted to three aggravating circumstances for serving a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)), being on supervision at the time of the offenses (*id*., rule 4.421(b)(4)), and previously performing unsatisfactorily while being supervised (*id*., rule 4.421(b)(5)).

4

imposed a concurrent term of two years on count 1.  The court imposed and stayed two years on count 3 under section 654.

The court found King in violation of his probation for cases TA157309, TA157608, and TA158129, based on the convictions in the underlying case.[4]  The court imposed consecutive terms of eight months on each probation case.  For all four cases, the aggregate term was six years.

## DISCUSSION

### I.  Sufficiency of the evidence

King challenges the sufficiency of evidence to support the grand theft conviction.  Specifically, he asserts that substantial evidence does not support the jury's finding that the value of the stolen items exceeded $950.  We disagree.

#### A.  *Standard of review*

In determining a sufficiency of the evidence challenge, we "review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' [Citation.]" (*People v. Cuevas* (1995) 12 Cal.4th 252, 261, italics omitted.) "Reversal on this ground is unwarranted unless it appears 'that

---

[4]    On June 6, 2025, we consolidated the appeal for B339341 with the appeals for the three probation cases in B339346, B339348, and B339351.

5

upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) In other words, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055, italics omitted.)

### *B.  Analysis*

Viewed in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to support the jury's grand theft conviction. Two witnesses testified that the value of the stolen wheels exceeded $950, the minimum amount required for grand theft. Olsen, a partial owner of Pro Design Group and its Chief Operating Officer, testified that King stole approximately 16 wheels, which he estimated were valued at $200 to $400 each. Based on Olsen's lower estimation, the value of the stolen items totaled $3,200, which far exceeded the required minimum.

Even though Olsen admitted that he did not know the exact value of the stolen wheels, he was materially consistent with Orozco. With four years of experience as an office manager at Pro Design Group, Orozco was familiar with the contents of the warehouse, and was responsible for accounting, accounts payable, and accounts receivable. According to Orozco, King took approximately 12 wheels from the warehouse. She estimated that each wheel was worth around $200. Based on her estimation, the value of the stolen property totaled $2,400, which also exceeded the required minimum. "The testimony of just one witness is enough to sustain a conviction, so long as that

6

testimony is not inherently incredible. [Citation.]" (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.) Here, neither witness' testimony regarding the value of the wheels was " 'so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt.' [Citation.]" (*People v. Hovarter* (2008) 44 Cal.4th 983, 996.) Based on the testimony of Olsen and Orozco and the lack of any conflicting evidence, a rational trier of fact could reasonably conclude that the stolen wheels were worth more than $950.

## 1.     Personal knowledge of witnesses

King argues that the court should have excluded Olsen's and Orozco's testimony as unreliable because neither had sufficient personal knowledge of the value of the wheels, as required under Evidence Code section 702, subdivision (a). We disagree.

Evidence Code section 702, subdivision (a) states that "the testimony of a witness [at trial] concerning a particular matter is inadmissible unless [the witness] has personal knowledge of the matter." Personal knowledge means a present recollection of an impression derived from the exercise of the witness's own senses. (*People v. St. Andrew* (1980) 101 Cal.App.3d 450, 458.) When a witness's personal knowledge is in question, the trial court must make a preliminary determination of whether "there is evidence sufficient to sustain a finding" that the witness has the requisite knowledge. (Evid. Code, § 403, subd. (a)(2).) The trial court may exclude testimony for lack of personal knowledge " '*only if no jury could reasonably find* that [the witness] has such knowledge.' " (*People v. Anderson* (2001) 25 Cal.4th 543, 573.) Thus, "[a] witness challenged for lack of personal knowledge *must* . . . be

7

allowed to testify *if there is evidence from which a rational trier of fact could find* that the witness accurately perceived and recollected the testimonial events.  Once that threshold is passed, it is for the jury to decide whether the witness's perceptions and recollections are credible.  [Citation.]" (*Id.* at p. 574.)

An appellate court reviews a trial court's determination of this issue for abuse of discretion.  (*People v. Tatum* (2003) 108 Cal.App.4th 288, 298.)

King argues Orozco did not have personal knowledge of the value of the wheels because Pro Design Group did not buy or sell them.  We reject King's argument that personal knowledge of the value of the wheels required involvement in buying or selling them or ownership of them.  The evidence does not show a lack of the requisite knowledge.  As stated earlier, Orozco testified that her job responsibilities included accounting, accounts payable, and accounts receivable.  She was familiar with the inventory of the warehouse and with Pro Design Group's process of producing plastic products for a wheel company.  Orozco acknowledged that the value of the wheels could be affected by being factory seconds, but she did not change her original estimation.  This record established that Orozco had personal knowledge of the value of the wheels that were in the company's possession and were used in its manufacturing process.  Thus, we conclude that the trial court did not abuse its discretion in allowing Orozco's testimony.  We also reject King's claim that Olsen's testimony was "speculative and irrelevant because it was not based on his personal knowledge."[5]  As stated earlier, Olsen was a partial

---

[5]     Because we address the merits of King's challenge to Olsen's testimony, we need not reach the Attorney General's

8

owner and Chief Operating Officer of Pro Design Group. He was familiar with the day-to-day operations, manufacturing process, and inventory of the company. Again, we recognize that Olsen admitted he did not know the exact value of each wheel. But he provided an approximate value which corresponded to the value Orozco provided. Considering the scope and responsibilities of Olsen's position, the court did not abuse its discretion in permitting Olsen to testify. Any doubts about Olsen's knowledge were appropriately left for the jury to decide. (*People v. Mayfield* (1997) 14 Cal.4th 668, 735) ["Generally, 'doubts about the credibility of [an] in-court witness should be left for the jury's resolution.' "]

## 2. CALJIC No. 14.26

King argues that the trial court erred by declining to instruct with CALJIC No. 14.26, which informs the jury that the value of stolen property is based on its fair market value. The Attorney General concedes. We need not decide whether the trial's refusal to instruct was error. Even assuming it was error, it was harmless under either *People v. Watson* (1956) 46 Cal.2d 818, 836 or *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).

CALJIC No. 14.26 is based on section 484, subdivision (a).[6] CALJIC No. 14.26 states, "When the value of property alleged to have been taken by theft must be determined, the reasonable and

claim of forfeiture, nor King's response that his trial counsel was ineffective for failing to object.

[6] Section 484, subdivision (a) states, "In determining the value of the property obtained . . . the reasonable and fair market value shall be the test."

fair market value at the time and in the locality of the theft shall be the test."[7]  CALJIC No. 14.26 appears to set the fair market value of property as the default when its valuation has not otherwise been specified by statute.  (See e.g., § 491 [companion animals]; § 492 [written instruments]; § 493 [passage tickets].)

As stated, Olsen and Orozco both testified that the value of each stolen wheel was at least $200.  The testimonies of Orozco and Olsen were the only evidence in the record relating to the value of the wheels.  CALJIC No. 14.26 would have only directed the jury to consider their testimony as the fair market value of the wheels.  (See *People v. Tijerina* (1969) 1 Cal.3d 41, 45 ["[i]n the absence of proof . . . that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise . . . ."].)  It would not have directed the jury to reduce the value provided by Olsen and Orozco, absent evidence to support such a reduction. " '[F]air market value' means the highest price obtainable in the market rather than the lowest price or the average price." (*People v. Pena* (1977) 68 Cal.App.3d 100, 104.)

King argues that by failing to instruct with CALJIC No. 14.26, the trial court deprived the jury of the criteria they should have used to analyze the fair market value of the stolen items. But King misreads CALJIC No. 14.26.  CALJIC No. 14.26 defines fair market value as "the highest price, in cash, for which the

---

[7]  Similar to CALJIC No. 1426, CALCRIM No. 1801 defines fair market value as "the highest price the property would reasonably have been sold for in the open market at the time of, and in the general location of, the theft."

property would have sold in the open market at that time and in that locality, (1) if the owner was desirous of selling, but under no urgent necessity to do so; (2) if the buyer was desirous of buying but under no urgent necessity to do so; (3) if the seller had a reasonable time within which to find a purchaser; and (4) if the buyer had knowledge of the character of the property and of the uses to which it might be put." The four conditions listed in CALJIC No. 14.26 do not comprise criteria to assess or challenge evidence about the stolen property's value. They are the conditions that would provide the "highest price . . . for which the property would have been sold in the open market" at the time. (*Ibid*.) The conditions eliminate variables which might reduce the value of the property, such as urgency, desperation, or coercion to buy or sell, or lack of knowledge about the property which might dupe a potential buyer into paying a higher price.[8]

The questions King now poses—how did Olsen and Orozco know what an owner would receive if he sold the wheels or what a buyer would pay if he was desirous of buying them—are not questions that would arise from reading CALJIC No. 14.26. Rather, they are questions contemplated by CALJIC No. 14.27,

---

[8] This interpretation is consistent with CALCRIM No. 1801's bracketed optional language, which states, "Fair market value is the price a reasonable buyer and seller would agree on if the buyer wanted to buy the property and the seller wanted to sell it, but neither was under an urgent need to buy or sell." The bench notes to CALCRIM No. 1801 state, "If the evidence raises an issue that the value of the property may be inflated or deflated because of some urgency on the part of either the buyer or seller," the trial court should give this bracketed language.

which the trial court read to the jury.[9]  CALJIC No. 14.27 guides jurors to evaluate the opinion of an owner who testifies to the value of the property, including an assessment of the strengths and weaknesses of the reasons on which it is based.  King had the opportunity to challenge the bases of Orozco's and Olsen's opinions.  For example, King asked Orozco about whether the condition of the wheels as factory seconds could affect their value.  She acknowledged it could, but she did not change her valuation that each was worth $200.  Olsen candidly admitted that he could not be more precise than the estimated range of $200 to $400 for each wheel.  CALJIC No. 14.27 instructed the jury to consider these facts, along with Orozco's and Olsen's qualifications and other testimony, to accept or disregard their opinions.

We conclude beyond a reasonable doubt that the trial court's denial of King's request to instruct with CALJIC No. 14.26 did not contribute to the guilty verdict because the only evidence in the record about the stolen property's value supported that it exceeded $950 and CALJIC No. 14.26 would have merely directed

---

[9]     CALJIC No. 14.27 states:  "An expression of opinion on value by the owner may be considered by you in determining value together with any other evidence bearing on that issue.  In determining what weight to give an owner's opinion, you should consider the believability of the owner, the facts or materials upon which the opinion is based and the reasons for the opinions.  An opinion is only as good as the facts and reasons on which it is based.  If you find that any fact has not been proved [or has been disproved], consider that in determining the value of the opinion.  Likewise, you must consider the strengths and weaknesses of the reasons on which it is based.  You are not bound to accept an opinion as conclusive, but you should give to it the weight which you shall find it to be entitled.  You may disregard any opinion if you find it to be unreasonable."

12

the jury to value the stolen property at its fair market value at the time of the theft, rather than evaluate or challenge the evidence related to the property's value as instructed in CALJIC No. 14.27. (*Chapman*, *supra*, 386 U.S. at p. 24.)

### 3. Cumulative prejudice

King contends that the cumulative prejudice from the multiple errors requires reversal. But King cannot demonstrate that the cumulative effect of any alleged error resulted in prejudice. We have determined that no errors were made by the trial court. Because the one error we assumed for the sake of argument was harmless, we conclude reversal is not required. (*People v. Rivera* (2019) 7 Cal.5th 306, 348.)

### 4. Abstract of judgment

Both parties agree that the abstract of judgment erroneously states that King's convictions for counts 2 and 3 were the result of guilty pleas. We order the clerk of the superior court to amend Item No. 1 on the abstract of judgment to reflect that for counts 2 and 3, King was convicted by jury.

## DISPOSITION

We order the clerk of the superior court to amend the abstract of judgment to reflect in Item No. 1 that for counts 2 and 3, King was convicted by jury.

In all other aspects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HANASONO, J.


We concur:


EGERTON, Acting P. J.


OCHOA, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.